1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA

10

11   JESSE S.,                          )   Case No. 2:21-cv-04620-SP
                                        )
12              Plaintiff,              )
                                        )
13        v.                            )   MEMORANDUM OPINION AND
                                        )   ORDER
14                                      )
     KILOLO KIJAKAZI, Acting            )
15   Commissioner of Social Security    )
     Administration,                    )
16                                      )
                Defendant.              )
17                                      )
                                        )
18   _____)

19                          **I.**

20                    **INTRODUCTION**

21        On June 4, 2021, plaintiff Jesse S. filed a complaint against defendant, the

22   Commissioner of the Social Security Administration ("Commissioner"), seeking a

23   review of a denial of supplemental security income ("SSI").  The parties have fully

24   briefed the issue in dispute, and the court deems the matter suitable for

25   adjudication without oral argument.

26        Plaintiff presents one disputed issues for decision, whether the

27   Administrative Law Judge ("ALJ") properly considered the opinions of

28

                               1

consultative examiner Edward Ritvo, M.D. in making his residual functional capacity ("RFC") determination.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-8; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-10.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered Dr. Ritvo's opinions.  Consequently, the court affirms the decision of the Commissioner denying benefits.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 21 years old on the alleged disability onset date, has a high school education.  AR at 70, 209.  Plaintiff has no past relevant work.  *Id*. at 63.

On July 10, 2018, plaintiff applied for supplemental security income alleging disability since July 1, 2017.  AR at 70-71.  The application was denied initially, and on reconsideration.  AR at 107-12, 117-21.  On September 14, 2020, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  AR at 37-69.  The ALJ also heard testimony from Rebecca Williams, a vocational expert.  AR at 62-69.  On September 25, 2020, the ALJ issued a decision denying plaintiff's claim. AR at 15-32.

Applying the well-known five-step sequential evaluation process, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since July 10, 2018, the application date.  AR at 17.

At step two, the ALJ found plaintiff suffered from the severe impairments of major depressive disorder, generalized anxiety disorder, obsessive compulsive disorder, and polysubstance abuse.  AR at 18.

At step three, the ALJ found plaintiff's impairments, whether individually or

in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's RFC,[1] and determined that based on all of the impairments, including the substance use disorder, plaintiff had the RFC to perform a full range of work at all exertional levels, but had nonexertional limitations such that plaintiff: was limited to simple, repetitive tasks; was limited to not more than occasional interactions with co-workers, the general public, and supervisors; and would also be absent from the workplace one day per week.  AR at 20.

The ALJ found at step four that plaintiff had no past relevant work.  AR at 25.

At step five, considering plaintiff's age, education, work experience, and RFC, including his substance abuse disorder, the ALJ determined there were no jobs that existed in significant numbers in the national economy that plaintiff could perform.  AR at 26.  The ALJ concluded that a finding of "disabled" would therefore be appropriate. *Id*.

The ALJ then considered plaintiff's substance use and sobriety and found that if plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, but he would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.994(b)(5)(I)).  AR at 26-27.  The ALJ

---

[1]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  next found that if plaintiff stopped the substance use, he would have the same RFC,

2  except that he would no longer be absent from the workplace one day a week.  AR

3  at 28.

4       Returning to step five, the ALJ determined that, if plaintiff stopped the

5  substance use, there were jobs that exist in significant numbers in the national

6  economy that plaintiff could perform, including church janitor, conveyor feeder-

7  offbearer, and machine feeder.  AR at 31. The ALJ therefore concluded that

8  plaintiff's substance use disorder was a contributing factor material to the

9  determination of disability because plaintiff would not be disabled if he stopped

10  substance use.  AR at 32.  Consequently, the ALJ concluded plaintiff did not suffer

11  from a disability as defined by the Social Security Act.  *Id.*

12       Plaintiff filed a timely request for review of the ALJ's decision, which the

13  Appeals Council denied.  *Id.* at 1-4.  The ALJ's decision stands as the final

14  decision of the Commissioner.

## III.

## STANDARD OF REVIEW

17       This court is empowered to review decisions by the Commissioner to deny

18  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

19  Administration must be upheld if they are free of legal error and supported by

20  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

21  (as amended).  But if the court determines the ALJ's findings are based on legal

22  error or are not supported by substantial evidence in the record, the court may

23  reject the findings and set aside the decision to deny benefits.  *Aukland v.*

24  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

25  1144, 1147 (9th Cir. 2001).

26       "Substantial evidence is more than a mere scintilla, but less than a

27  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

28

1  "relevant evidence which a reasonable person might accept as adequate to support

2  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

3  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

4  finding, the reviewing court must review the administrative record as a whole,

5  "weighing both the evidence that supports and the evidence that detracts from the

6  ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

7  affirmed simply by isolating a specific quantum of supporting evidence.'"

8  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

9  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

10  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

11  of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

12  1992)).

13                                                 **IV.**

14                                         **DISCUSSION**

15         Plaintiff challenges the ALJ's determination that plaintiff was not disabled

16  because if he stopped the substance use, he would have the RFC to perform work

17  at all exertional levels limited to simple, repetitive tasks and occasional social

18  interactions.  P. Mem. at 3-8.  Specifically, plaintiff argues the ALJ improperly

19  evaluated Dr. Ritvo's findings of marked limitations.

20         RFC is what one can "still do despite [his or her] limitations."  20 C.F.R.

21  § 404.1545(a)(1).  Among the evidence an ALJ relies on in an RFC assessment is

22  medical evidence and opinions.  20 C.F.R. § 404.1545(a)(3).

23         For claims filed before March 27, 2017, the opinion of a treating physician

24  was given more weight then an examining physician's opinion, which was given

25  more weight than a reviewing physician's opinion.  *See Holohan v. Massanari*, 246

26  F.3d 1195, 1202 (9th Cir. 2001).  Under this previous hierarchy of medical

27  opinions framework, the Ninth Circuit required an ALJ to provide clear and

28

convincing reasons supported by substantial evidence to reject an uncontradicted opinion of a treating or examining physician, or specific and legitimate reasons supported by substantial evidence to reject a contradicted opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (as amended).

Under the revised regulations, for cases filed on or after March 27, 2017, an ALJ will no longer defer or give specific evidentiary weight to any medical opinions. 20 C.F.R. § 404.1520c(a).

> For claims subject to the new regulations, the former hierarchy of
> medical opinions – in which we assign presumptive weight based on
> the extent of the doctor's relationship with the claimant – no longer
> applies. Now, an ALJ's decision, including the decision to discredit
> any medical opinion, must simply be supported by substantial
> evidence.

*Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). As such, the previous requirement that an ALJ provide "specific and legitimate" reasons to reject a treating or examining physician's opinion "is clearly irreconcilable" with the new regulations. *Id.* at 790.

An ALJ now will consider the persuasiveness of the medical opinions and findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a), (c). The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2). The ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b), (b)(2)). The

6

ALJ may, but is not required to, explain how he or she considered the other three factors.  20 C.F.R. § 404.1520c(b)(2).  But when two or more medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is then required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

With respect to supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

**Relevant Medical Opinions**

On November 20, 2018, Dr. Edward Ritvo, a psychiatrist, examined plaintiff and reviewed his medical records.  AR at 411-18.  During the mental status examination Dr. Ritvo observed plaintiff was nervous, "shaking with gross body tremors and shaking of his arms."  AR at 414.  Plaintiff's chief complaint was that he had "anxieties all the time and can't concentrate.  AR at 412.  Plaintiff reported to have never held a job because of his anxiety and difficulties in interpersonal situations.  AR at 414  He described himself as being socially isolated, with no friends or social activities.  *Id*.  Although plaintiff described himself as having "difficulty following our conversation," Dr. Ritvo noted that plaintiff was "able to volunteer information spontaneously" and that there was "no obvious psychomotor agitation or retardation."  *Id*. at 414-15.  Dr. Ritvo also observed that plaintiff was

"coherent and organized" and that he did not exhibit "tangentiality or loosening of associations." AR at 415.  Although plaintiff described his inability to concentrate, including intrusive OCD thoughts, Dr. Ritvo noted that plaintiff was "relevant and non-delusional," and did not exhibit "bizzare or psychotic thought content," or "suicidal, homicidal, or paranoid ideation." *Id*.  Dr. Ritvo further observed plaintiff was "alert and oriented in all spheres," appeared "to be of at least average intelligence," and was able to follow their conversation "well." *Id*.  Dr. Ritvo also noted that plaintiff's insight and judgment appeared to be intact.  AR at 416. Dr. Ritvo stated it was possible plaintiff had "an underlying psychotic process such as schizoaffective disorder with a history of auditory hallucinations in the past of a paranoid nature," and that he was "quite impaired" at the time of the examination. *Id*.

Based on the history, examination, and tests administered, Dr. Ritvo opined plaintiff had: no impairment in ability to understand, remember, or complete simple commands; a marked impairment in ability to understand, remember, or complete complex commands; a marked impairment in ability to interact appropriately with supervisors, coworkers or the public; a marked impairment in ability to comply with job rules such as safety and attendance; a marked impairment in ability to respond to the change in the normal workplace setting; and a marked impairment in ability to maintain persistence and pace in a normal workplace setting.  *Id*. at 417.

On February 28, 2019, State Agency psychologist Dr. Sergiy Barsukov reviewed plaintiff's medical records and the consultative examiner's opinion.  AR at 91-102.  Dr. Barsukov noted it appeared the consultative examiner "relied too heavily" on plaintiff's report.  AR at 95, 97.  Dr. Barsukov indicated plaintiff's mental status examination was normal (AR at 95), and that he "is capable of simple and routine tasks" although with limited social contact.  AR at 97-99.  Dr.

1    Barsukov stated he did not see a marked impairment in plaintiff's understanding
2    and remembering, and determined plaintiff performed all tasks adequately at the
3    examination but would likely struggle with complex tasks.  AR at 95.  Dr.
4    Barsukov further noted that plaintiff's statement regarding social isolation conflicts
5    with his statement that he stays on a couch at a friend's house, which "would not
6    be considered marked or extreme limit on social."  *Id*.  Ultimately, Dr. Barsukov
7    found no marked limitations, but opined plaintiff was moderately limited in his
8    ability to carry out detailed instructions, maintain attention and concentration for
9    extended periods, and interact appropriately with the general public.  AR at 98-99.
10   He found plaintiff was not able to perform complex tasks and should have only
11   rare contact with the general public.  AR at 99.

12        **The ALJ's Findings**

13        In assessing plaintiff's RFC, the ALJ found Dr. Ritvo's opinions to be "not
14   entirely persuasive."  AR at 24.  The ALJ discounted Dr. Ritvo's opinion that
15   plaintiff had marked limitations because it was not supported by the medical
16   evidence in the record, including being at odds with Dr. Ritvo's own clinical
17   observations.  *Id*.  As the ALJ noted, Dr. Ritvo's own observations showed normal
18   findings that could reasonably appear inconsistent with the degree of limitations he
19   opined.  AR at 24 (citing AR at 415).  For example, records cited by the ALJ reveal
20   findings of plaintiff being "coherent and organized," having "no tangentiality or
21   loosening of associations," being "oriented in all spheres," and being "of at least
22   average intelligence."  AR at 415.  The ALJ recognized that Dr. Ritvo's opinions
23   could be supported by plaintiff's self-reported symptoms, such as "having
24   difficulty following a conversation, and nervous appearance with 'gross body
25   tremors and shaking of his arms.'"  AR at 24.  But despite plaintiff's account of his
26   inability to concentrate and loss of focus due to his OCD, Dr. Ritvo noted that
27   plaintiff was "able to follow [their] conversation well" and "able to perform
28

1    memory and concentration tasks on evaluation." *Id*.

2         The ALJ's also recognized that other medical opinions found plaintiff's

3    limitations were not as great as what Dr. Ritvo suggested.  *See* AR at 23-24.  The

4    ALJ particularly cited and found persuasive the prior administrative medical

5    findings of Dr. Barsukov that plaintiff was "capable of simple and routine tasks

6    with limited social contact."  AR at 23 (citing AR at 97).  The ALJ reasoned that

7    Dr. Barsukov's findings were supported by analysis of the record, noting no

8    marked limitations in social functioning or adaptation.  AR at 23 (citing AR at 95-

9    96).  Dr. Barsukov additionally found that descriptions of plaintiff as a recluse and

10   staying on his friend's couch would not be considered marked social limitations.

11   *Id*.  The ALJ determined Dr. Barsukov's findings were also consistent with the

12   medical records documenting that prescription medication helped stabilize

13   plaintiff's mood and mental status, although without plaintiff's disclosure to his

14   doctor of marijuana and prescription drug use.  AR at 23 (citing AR at 95, 332,

15   359, 394, 405, 424-25, 436, 445).

16        While rejecting Dr. Ritvo's findings of marked limitations in many areas, the

17   ALJ found persuasive Dr. Ritvo's opinion that plaintiff had "no impairment in his

18   ability to understand, remember, or complete simple commands."  AR at 24.  The

19   ALJ noted that the findings of no impairment were supported by plaintiff's report

20   of being able to take care of his personal needs and to go out alone.  AR at 24

21   (citing AR at 381, 383, 384, 398).  Additionally, the ALJ determined the record as

22   a whole documented minimal abnormal mental status examination findings during

23   the relevant period.  *Id*.

24        Finally with respect to Dr. Ritvo's opinions, the ALJ stated that plaintiff's

25   "report of cessation of drug use and failure to disclose his abuse of marijuana and

26   prescription drugs reduce[d] the reliability of the opinions and any greater degree

27   of restriction may be due to [plaintiff's] polysubstance abuse, rather than his

28

1   mental medically determinable impairments." AR at 24.  Plaintiff takes issue with

2   this, maintaining that plaintiff was truthful as to his drug use at the time of his

3   November 20, 2018 examination by Dr. Ritvo.  P. Mem. at 7-8.  Yet the ALJ cited

4   records reflecting plaintiff's steady marijuana and prescription drug use for years,

5   apparently including the time of his examination by Dr. Ritvo.  *See* AR at 24, 28,

6   467, 475, 638, 674.

7        Plaintiff advances a number of other arguments for why the ALJ did not

8   properly consider Dr. Ritvo's opinions.  P. Mem. at 6-8.  These were addressed

9   above, are no longer applicable under the new regulations, or are inapposite.

10       In sum, the ALJ here adequately considered the persuasiveness of the

11  medical opinions, particularly as to supportability and consistency, and sufficiently

12  explained why Dr. Ritvo's opinions were not entirely persuasive.  Substantial

13  evidence in the record supports the ALJ's evaluation.  The ALJ cited to Dr. Ritvo's

14  own clinical findings, plaintiff's medical records, and to Dr. Barsukov's prior

15  administrative findings, explaining why those were inconsistent with Dr. Ritvo's

16  finding of marked limitations.  Nothing requires the ALJ to discuss every piece of

17  evidence so long as the decision does not broadly reject evidence in a way that

18  prevents meaningful judicial review.  *See* 20 C.F.R. §§ 404.1520c(b)(1),

19  416.920c(b)(1).  The court finds that the ALJ fully and adequately addressed the

20  basis for his finding that some of Dr. Ritvo's opinions were unpersuasive.

21  //

22  //

23

24

25

26

27

28

V.

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: July 5, 2022

_____
SHERI PYM
United States Magistrate Judge